******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT H. FURBUSH *v.* COMMISSIONER
OF CORRECTION
(AC 36269)

DiPentima, C. J., and Lavine and Mullins, Js.

*Argued May 18—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Cheryl A. Juniewic*, assigned counsel, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney,
with whom, on the brief, was *Matthew C. Gedansky*,
state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Robert H. Furbush, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, he claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied his request to have subpoenas issued to the "vast majority of witnesses" that he had requested. We conclude that the court did not abuse its discretion in denying his petition for certification to appeal. Accordingly, we dismiss the appeal.

The following facts and procedural history are relevant to this appeal. Following a court trial, the petitioner was found guilty of manslaughter in the second degree and two counts of operating a motor vehicle while under the influence of intoxicating liquor or drugs. This court affirmed the petitioner's conviction on direct appeal. See *State* v. *Furbush*, 131 Conn. App. 733, 27 A.3d 497 (2011).

On October 3, 2012, the self-represented petitioner filed a second amended petition for a writ of habeas corpus. He alleged, inter alia, ineffective assistance of counsel by his criminal trial attorney and his appellate attorney. A habeas trial was held on September 9, 2013. At the conclusion of that trial, the court issued an oral decision denying the petition for a writ of habeas corpus. The habeas court determined that neither the petitioner's criminal trial attorney nor his appellate attorney had performed deficiently. It further concluded that the petitioner had failed to prove prejudice.[1]

On September 18, 2013, the petitioner filed a petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus. Specifically, he alleged that the court improperly had denied 87 percent of his requests to subpoena witnesses for the habeas trial. On October 4, 2013, the court denied the petition for certification to appeal. This appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that

a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Saunders* v. *Commissioner of Correction*, 157 Conn. App. 257, 261–62,     A.3d     (2015); *Collazo* v. *Commissioner of Correction*, 154 Conn. App. 625, 629, 108 A.3d 1145, cert. denied, 317 Conn. 901, A.3d     (2015).

On appeal, the petitioner claims that the court improperly denied him the opportunity to have subpoenas issued for a number of witnesses. We note that "[t]he court is granted broad discretion in issuing subpoenas for witnesses on behalf of self-represented parties. [See] Practice Book § 7-19 ('[a] judge . . . may direct or deny the issuance of subpoenas as such judge deems warranted under the circumstances, keeping in mind the nature of the scheduled hearing and future opportunities for examination of witnesses, as may be appropriate')." *Francis* v. *Commissioner of Correction*, 151 Conn. App. 574, 579, 96 A.3d 597, cert. denied, 314 Conn. 922, 100 A.3d 854 (2014). The petitioner contends that he presented the court with thirty subpoenas and that the court directed the issuance of only four. During the trial, the habeas court noted that the petitioner had failed to include the specific reasons on his applications for subpoenaing each witness.[2] Under these facts and circumstances, the habeas court did not abuse its broad discretion in denying the requested subpoenas. Moreover, it was not an abuse of discretion to deny the petition for certification to appeal on this issue.[3]

After a thorough review of the record and briefs, we conclude that the petitioner has not demonstrated that the issues he has raised in the petition for certification to appeal are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further. See *Saunders* v. *Commissioner of Correction*, supra, 157 Conn. App. 261–62; *Collazo* v. *Commissioner of Correction*, supra, 154 Conn. App. 629. Consequently, we conclude that the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

[1] "In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . . A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 153 Conn. App. 747, 751–52, 104 A.3d 767 (2014), cert. denied, 315 Conn. 912, 106 A.3d 304 (2015); see also *Howard* v. *Commissioner of Correction*, 151 Conn. App. 706, 709, 95 A.3d 1221 (2014).

[2] The following colloquy occurred between the petitioner and the habeas court:

"[The Petitioner]: Yes. Could I have one thing for the record?

"The Court: Yes.

"[The Petitioner]: I had thirty witnesses on my witness list. You only gave me four. The issues we're having here with not having some of my evidence entered into documents is the fact that the witnesses who would have been able to make their—you know, get the evidence right, are not here because you denied me access to 87 percent of my witnesses.

"The Court: Well, in the application for approval of the issuance of a subpoena you have to put the reasons why.

"[The Petitioner]: I did.

"The Court: And unless you put that specific reason in there, the court would have no way of knowing why you wanted to call a witness.

"[The Petitioner]: I have those applications and on every application I put down the reason why I needed them to testify, and now I'm sitting here and my evidence is not being admitted because I don't—because I can't—you know, I don't have the right people here to bring it in, so I'm handcuffed more than steel.

"The Court: Well, let me see the application again. I guess they're right here; is that right?

"The Clerk: Your Honor, in file two, numbers 132 through 146.

"The Court: Well, I'll just give you an example. You have Attorney Susan Marks, provide sworn statement.

"[The Petitioner]: Well, she would have—

"The Court: Rob Britt was not forthcoming.

"[The Petitioner]: Well, Britt, Britt and [Patricia] Froehlich would have prevented him from sitting up there lying because we would have had the—we would have had these documents up there on the record I could have got him for, you know.

"The Court: But it doesn't say in here to authenticate police report, et cetera. You just have judge in trial, or Judge Schuman, court reporter."

"[The Petitioner]: But you still only gave me four witnesses out of thirty and now I'm handcuffed with my evidence because I can't—

"The Court: Yes, but you didn't specify that the reason you needed them was to authenticate or to establish any particular piece of evidence. That's why. You just can't say, I want somebody because they were [a] [freedom of information] attorney.

"[The Petitioner]: Well, again, I'm pro se . . . . Maybe we should have had a hearing on those, on those issues, and we should have decided, because right now, right now, my documents are worthless to prove a pattern that this, the conduct and credibility of that trooper who was just sitting up there lying again, you know, we could have proved that if I had the right people here to testify.

"The Court: Well, that may be the case, but we have who we—

"[The Petitioner]: May be the case? That is the case.

"The Court: We have who we have. You want to call attorney—

"[The Petitioner]: We have who you want, not who I want.

"The Court: No, who you requested with the reasons you have, and you didn't give sufficient reasons to have the people subpoenaed, and that is true in any case—

"[The Petitioner]: Well, on my subpoena for—

"The Court: Where there's a—

"[The Petitioner]: On my subpoena for Attorney [Matthew C.] Gedansky I put nothing, and you gave me him.

"The Court: Well, from reading your complaint I saw what your issue was.

"[The Petitioner]: Well, if you read my complaint against—

"The Court: But as to these other people, I had no idea.

"[The Petitioner]: If you read my complaint against [Michael] Mathieu, you would understand why it was important to have—

"The Court: Well, I can't anticipate—

"[The Petitioner]: —the state police who investigated him, the state's attorney who prosecuted him, his attorney. They're all lying.

"The Court: Well, I don't know that any of that is specified or is apparent—

"[The Petitioner]: Well, you won't know any of that is true because you didn't allow it.

"The Court: Ok. But you didn't indicate who you needed to authenticate a document. That doesn't mean they would have been allowed to testify anyway. You're talking about the witness' attorney coming in . . . . But you didn't put it in your subpoena, and I don't know that I would have granted it anyway, and all pro ses who ask for subpoenas have to go through that process. It isn't just you."

[3] We also note that the petitioner's brief addressed in detail only two of the requested subpoenas. With respect to the remaining twenty-eight, he failed to provide the required analysis as to why the court abused its discretion in denying certification to appeal. See, e.g., *Jackson* v. *Commissioner*

*of Correction*, 149 Conn. App. 681, 689, 89 A.3d 426, cert. granted on other grounds, 313 Conn. 901, 96 A.3d 558 (2014).

With respect to the two subpoena requests discussed in the petitioner's brief, one for Robert Britt and one for Patricia Froehlich, the petitioner argued that "these witnesses would have provided information and testimony that would have gone to the credibility of the state's accident reconstructionist, Michael Mathieu, and in turn, how trial counsel failed to effectively cross-examine Mathieu at trial, thus allowing [the] petitioner to prove his claim that trial counsel provided him with deficient representation."

We agree with the respondent, the Commissioner of Correction, that the petitioner cannot sustain his burden of demonstrating that the court abused its discretion in denying certification to appeal because the state had produced another accident reconstructionist, state police Trooper James Foley. Foley, whose credibility would not have been challenged by Britt or Froehlich, reached the same conclusion as Mathieu, which was that the petitioner was at fault for the fatal automobile accident underlying his criminal conviction. In other words, even had the court granted the petitioner's request to subpoena Britt and Froehlich, he would not have been able to establish the prejudice necessary to prevail on his ineffective assistance of counsel claim due to Foley's independent testimony.

---